**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ST. LUKE'S EPISCOPAL HOSPITAL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-1870 |
| | § | |
| LOUISIANA HEALTH SERVICE & | § | |
| INDEMNITY COMPANY A/K/A/ BLUE | § | |
| CROSS BLUE SHIELD OF LOUISIANA, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This diversity suit arises from a dispute about payments due under a health benefit

plan.  The plaintiff is St. Luke's Episcopal Hospital, located in Houston, Texas.  St. Luke's

provided medical care on two occasions to a patient insured by Blue Cross and Blue Shield

of Louisiana ("BCBSLA").   The BCBSLA insurance plan covered the employees of

Volunteers of America Greater Baton Rouge, Inc.  St. Luke's alleges that on both occasions,

before providing care to the patient, it telephoned BCBSLA and obtained verification of the

patient's coverage.  The total charges for the care St. Luke's provided were $1,481,800.40.

Under the "Blue Card Program," however, the processing and billing were handled for

BCBSLA by Blue Cross and Blue Shield of Texas, which had a managed-care contract with

St. Luke's.  BCBSLA received the discounted rates provided under that contract.  As a result,

BCBSLA was billed 60% of the charges, or $889,080.24.  BCBSLA paid $819,234.67 of the

$889,080.24 but refused to pay the remaining $69,845.57.  St. Luke's sued BCBSLA in

Texas state court, asserting a state-law breach of contract claim for $662,565.80 – the $69,845.57 owed under the discounted rates and a "late-payment" penalty of $592,720.23, which represents the difference between the undiscounted and the discounted charges.  St. Luke's alleged that BCBSLA breached the managed-care contract between St. Luke's and Blue Cross and Blue Shield of Texas.  BCBSLA timely removed on the basis of diversity and moved to dismiss for lack of personal jurisdiction and for failure to state a claim.  (Docket Entry No. 12).  St. Luke's responded, (Docket Entry No. 13), and BCBSLA replied, (Docket Entry No. 14).

Based on a careful review of the motion, response, and reply, the parties' submissions, and the applicable law, this court grants the motion to dismiss for failure to state a claim, grants leave to amend, and defers ruling on the motion to dismiss for lack of personal jurisdiction until the period for amendment passes.  The reasons are explained below.

## I.    Background

BCBSLA is a not-for-profit mutual benefit insurance company organized under Louisiana law, with its principal place of business in Baton Rouge, Louisiana.  BCBLSA is an independent licensee of the Blue Cross and Blue Shield Association.  BCBSLA is licensed to offer health-care services only in the State of Louisiana.  BCBSLA does not maintain any registered agents, employees, or offices outside Louisiana.  BCBSLA does not maintain bank accounts in Texas, pay taxes in Texas, or own real property in Texas.  BCBSLA asserts that to the extent it conducts any business outside Louisiana, "the purpose of that business is to

obtain goods and services for its Louisiana subscribers and its Louisiana networks of healthcare providers." (Docket Entry No. 12 at 1-2).

BCBSLA is a participant in the Blue Cross and Blue Shield Association's Blue Card Program. If Association members' beneficiaries obtain out-of-state medical care in states with a participating Blue Cross and Blue Shield entity, the Blue Cross and Blue Shield entity in the state where the beneficiary is treated – in this case, Blue Cross and Blue Shield of Texas – processes the claims and arranges for billing to the beneficiary's insurer – in this case, BCBSLA. This arrangement enables the beneficiary's insurer to take advantage of any discounted rates that the in-state entity has with the treating facility. Blue Cross and Blue Shield of Texas and St. Luke's have a managed-care agreement that provides discounted rates for health care services. The agreement also provides that St. Luke's will extend its discounted rates to Blue Cross and Blue Shield of Texas's out-of-state affiliates, such as BCBSLA. (Docket Entry No. 1, Ex. A at 5; Docket Entry No. 13 at 2).

On September 20, 2005 through October 20, 2005, and again on November 15, 2005 through February 24, 2006, P.B.,[1] a patient insured by BCBSLA, was admitted by St. Luke's hospital for urgent treatment of a severe medical condition. A St. Luke's representative telephoned a BCBSLA representative located in Louisiana on September 20, 2005 and on November 15, 2005 to verify P.B.'s coverage. After each conversation, BCBSLA issued authorization numbers and certified the continued care of P.B. (Docket Entry No. 1, Ex. A

---

[1] The patient is referred to by initials to comply with HIPAA requirements.

at 3-4).  Although P.B.'s policy with BCBSLA had a nonassignment clause, P.B. signed a form that St. Luke's routinely uses.  The form assigned to St. Luke's all P.B.'s rights under the policy relating to P.B.'s medical treatment by St. Luke's.[2]  (Docket Entry No. 13, Ex. A).

P.B.'s hospital bills came to $1,481,800.40.  This was reduced to $889,080.24 under the discounted-rate structure provided by the managed-care agreement between St. Luke's and the processing entity, Blue Cross and Blue Shield of Texas.  BCBSLA paid $819,234.67 but disputed the balance.  BCBSLA argued that St. Luke's should not have applied a billing code for implanting a heart-assist device.  On April 22, 2008, after what St. Luke's characterizes as "numerous attempts to call, negotiate and follow-up" with BCBSLA, St. Luke's filed suit in Texas state court, asserting that BCBSLA had become bound to the managed-care contract between St. Luke's and Blue Cross and Blue Shield of Texas and had breached that contract by failing to reimburse St. Luke's fully.  St. Luke's alleged that BCBSLA owed the $69,845.57 unpaid balance plus an additional $592,702.23 in late-payment penalties.  (Docket Entry No. 1, Ex. A at 4-5).  BCBSLA timely removed and subsequently moved to dismiss.

## II.     The Motion to Dismiss under Rule 12(b)(2)

### A.     The Legal Standard

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the long-arm statute of the forum state confers personal jurisdiction

---

[2] St. Luke's did not raise the assignment in its complaint but did raise it in response to BCBSLA's motion to dismiss.

over that defendant and exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006). The Texas long-arm statute confers jurisdiction to the limits of due process. *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008); TEX. CIV. PRAC. AND REM. CODE ANN. § 17.041-.045; *see also Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). Due process permits the exercise of personal jurisdiction over a nonresident defendant when the defendant has "minimum contacts" with the forum state and the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (internal quotations omitted) (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

A plaintiff bears the burden of demonstrating facts sufficient to support personal jurisdiction over a nonresident defendant. That burden is met by a *prima facie* showing; proof by a preponderance of the evidence is not necessary. *Johnston*, 523 F.3d at 609; *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Revell*, 317 F.3d at 469. "[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *Johnston*, 523 F.3d at 609 (internal quotations omitted) (quoting *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)).

5

"There are two types of minimum contacts:  those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Id.* (internal quotations omitted) (quoting *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). "Specific jurisdiction applies when a nonresident defendant 'has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Walk Haydel & Assocs., Inc. v. Coastal Power Prod.* Co., 517 F.3d 235, 243 (5th Cir. 2008) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001)).  To determine whether specific jurisdiction exists, a court must examine the relationship between the defendant, the forum, and the litigation. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).  Even a single contact can support specific jurisdiction if the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475; *see also Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).  A court may exercise specific jurisdiction when: (1) the nonresident defendant purposefully avails itself of the privileges of conducting activities in the forum state; and (2) the controversy arises out of or is related to the defendant's contacts with the forum state.  *Freudensprung*, 379 F.3d at 343 (citations omitted).  The nonresident's purposeful availment must be such that the defendant could reasonably anticipate being haled into court in the forum state. *Stroman Realty*, 528 F.3d at 386-87 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

6

Specific jurisdiction requires a sufficient nexus between the nonresident defendant's contacts with the forum and the cause of action. *Seiferth*, 472 F.3d at 275 n. 5.

When the cause of action does not arise from or relate to the foreign defendant's purposeful conduct within the forum state, due process requires that the foreign defendant have engaged in "continuous and systematic general business contacts with the forum state" before a court may exercise general personal jurisdiction. *Stroman Realty*, 528 F.3d at 385 (internal quotations omitted) (quoting *Helicopteros Nacionales*, 466 U.S. at 415). The plaintiff must demonstrate contacts of a more extensive quality and nature between the forum state and the defendant than those needed to support specific jurisdiction. *Johnston*, 523 F.3d at 609. To exercise general jurisdiction, the court must determine whether the defendant has "substantial, continuous, and systematic contacts" with the forum state. *Central Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003).

**B.      Specific Jurisdiction**

St. Luke's asserts that the necessary minimum contacts for specific jurisdiction arise from BCBSLA's authorization of care through the two telephone calls made by St. Luke's, from BCBSLA's partial payment of the amount St. Luke's billed, and from BCBSLA's participation in the Blue Card Program. (Docket Entry No. 13 at 2). BCBSLA counters that specific jurisdiction is not present because "there are no contacts whereby BCBSLA purposefully availed itself of the benefits and protections of Texas law," that the insured's emergency medical care in Texas "was, at best, a random contact," and "BCBSLA did not direct the patient to Texas for medical treatment." (Docket Entry No. 12 at 8).

### 1.  *Telephone Authorizations and Partial Payment*

The case law makes clear – and St. Luke's does not dispute – that the telephone contacts do not by themselves provide sufficient contacts for specific jurisdiction. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 791-92 (Tex. 2005) (out-of-state defendant's commission of a tort in response to a telephone call initiated from Texas did not establish the Texas court's personal jurisdiction); *see also Perez v. Pan Am. Life Ins. Co.*, 96 F.3d 1442, 1996 WL 511748, at *2 (5th Cir. Aug. 20, 1996) (a Guatemalan insurance company's authorization of the insured's treatment in Texas was insufficient to establish personal jurisdiction in Texas).  Such contacts are insufficient because they are "unsolicited" by the insurer and are the product of "mere fortuity that [the hospital] is a resident of the state where [the insured] traveled in order to receive medical treatment."  *See, e.g., Omega Hosp., L.L.C. v. Bd. of Trustees of the State of N.C. Teachers' and State Employees' Comprehensive Major Med. Plan*, No. 08-1575, 2008 WL 4286757, at **3-4 (E.D. La. Sept. 16, 2008) (two telephone conversations initiated by a Louisiana hospital to confirm coverage were insufficient to establish personal jurisdiction over North Carolina insurers); *Mem'l Hosp. Sys. v. Blue Cross and Blue Shield of Ark.*, 830 F. Supp. 968, 971-73 (S.D. Tex. 1993) (a telephone conversation initiated by a Texas hospital to confirm coverage was insufficient to establish specific jurisdiction over an Arkansas insurer) (citing cases); *Omega*, 2008 WL 4286757, at *4.  Because such contacts arise because of the insured's travel to the forum state, rather than from any affirmative decision by the insurer, such contacts do not rise to the level of "purposeful[ ] avail[ment] . . . of the privilege of conducting activities within the

forum state, thus invoking the benefits and protections of its laws." *Burger King Corp.*, 471 U.S. at 475.

St. Luke's argues that the telephone authorizations together with BCBSLA's refusal to pay part of the bill establish the requisite contacts.  (Docket Entry No. 13 at 5) ("BCBSLA purposefully availed itself of Texas jurisdiction when it expressly approved treatment of one of its insureds in a Texas hospital and failed to pay the agreed contractual rate.").  The weight of authority, however, holds that an out-of-state insurer does not subject itself to personal jurisdiction in a forum state by verifying coverage for treatment of the insured in that state and paying some of the bills for that treatment.

In *Whittaker v. Medical Mutual of Ohio*, 96 F. Supp. 2d 1197, 1200-01 (D. Kan. 2000), for example, the Kansas court concluded that it lacked jurisdiction over an Ohio insurer of a patient who had moved to Kansas to seek medical treatment.  The Ohio insurer allegedly told the insured that the treatment would be covered under the insurer's plan. The insurer paid the patient's Kansas hospital bills for a year but stopped paying after determining that under Ohio law, the insured's treatments were no longer medically necessary.  *Id*. at 1199.  The insured sued in Kansas federal district court to challenge the insurer's determination.  The Kansas court rejected the insured's argument that the Ohio insurer's assurance of coverage, payment of some of the Kansas medical bills, and sending notice of nonpayment to Kansas established minimum contacts in Kansas.  The court held that because "[i]t was [the insured's] unilateral decision to seek treatment in Kansas which caused defendants to have to send payments and notice into Kansas," such payments and

9

notice were legally insufficient for a finding that the insurer purposefully availed itself of the

benefits of doing business in Kansas.  *Id*. at 1200.  The court summarized:

> The insurance contract, designed to benefit Ohio teachers, was
> entered into by plaintiff when she was a resident of Ohio.  At the
> time of contracting, when plaintiff became eligible for benefits
> under the STRS plan, she was a resident of Ohio.  Therefore,
> sending payment, notice of nonpayment, and other
> communications into Kansas, as a result of plaintiff's move to
> Kansas, are not legally sufficient to establish personal
> jurisdiction.

*Id*. at 1201.  The court also rejected the argument that the fact that the insurer told the insured

that treatment in Kansas would be covered supported personal jurisdiction in Kansas:

> As to the first contact, [the insurer] is obligated to carry out its
> insurance contracts no matter in which state treatment is sought.
> Therefore, the fact that Medical Mutual acknowledged its
> obligation to pay under the insurance plan if plaintiff sought
> treatment in Kansas is not purposeful availment.

*Id*. at 1200.

*Bayada Nurses, Inc. v. Blue Cross and Blue Shield of Michigan*, No. 08-1241, 2008

WL 2945388, at *1 (E.D. Pa. July 30, 2008), is similar.  In *Bayada*, a Michigan insurer had

paid a Pennsylvania nursing-services provider for nearly three years for treating a retired

beneficiary who lived in North Carolina.  Before the payments, there were at least two phone

conversations between the provider and the insurer discussing coverage.  The court found

that the insurer was not subject to specific personal jurisdiction in Pennsylvania.  *Id*. at *5.

The court reasoned that the insurer's payments to Pennsylvania were the result of the

beneficiary's selection of the nursing provider, not the insurer's "choice to do business with

[the provider] in Pennsylvania." *Id*.  The court held that the telephone calls and payments did not establish specific personal jurisdiction in Pennsylvania.  *Id*.

Another example is *Berg v. Blue Cross and Blue Shield of Utica-Watertown, Inc.*, No. C-93-2752, 1993 WL 467859, at *4 (N.D. Cal. Nov. 2, 1993), which involved a New York insurer that had authorized the insured's care in California and paid the insured's California hospital bills in full and rehabilitation-program bills in part.  The California court rejected the insured's argument that the insurer's initial payment of the claims to a California address "without comment" constituted purposeful availment.  *Id*. at *3.  The court emphasized that for jurisdictional purposes, the proper inquiry was whether the insurer had taken affirmative steps to "avail[ ] itself of benefits from activities related to that State" or whether the insurer was merely responding to actions taken by the insured.  Finding the latter, the court held that it lacked specific personal jurisdiction.  *Id*.

Two cases reach a different result.  In *Peay v. Bellsouth Medical Assistance Plan*, 205 F.3d 1206, 1213 (10th Cir. 2000), the court held that a Georgia health insurer had sufficient contacts with Utah to satisfy due process.  The case involved payment for psychiatric treatment for a Tennessee insured in a Utah facility.  The court noted that the defendants "precertified [the patient's] treatment at a Utah hospital and paid [the doctor], a Utah resident, for a portion of [the patient's] care."  *Id*.  The court concluded that "[b]ecause defendants rendered benefits in Utah, they knew or should have known that a dispute over

11

benefits could arise in Utah." *Id.*[3]  In *Nieves v. Houston Industries, Inc.*, 771 F. Supp. 159, 160 (M.D. La. 1991), the court concluded that it had jurisdiction over a Texas insurer that had permitted the insured to keep her medical insurance while she lived in Louisiana during a leave of absence from her Texas employment.  During the insured's stay in Louisiana, the insurer paid some claims for treatment she received from her Louisiana doctors but denied others.  The district court concluded that it had personal jurisdiction because on these facts, the insurer "could reasonably have anticipated that any medical claims which may be denied by the Plan may have required the defendant to defend its position in the state of Louisiana." *Id.*

The holdings of *Peay* and *Nieves* stress whether it was foreseeable to the insurer that it would be sued in the state where it paid claims for its insured's medical treatment in a dispute over those claims or payments.  But "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 295.  The courts that have considered whether an insurer's actions constitute purposeful availment of the benefits of conducting activities in the forum state conclude that an out-of-state health benefits insurer does not subject itself to specific jurisdiction in a state in which its insured receives medical treatment merely by confirming coverage and paying some of the insured's medical bills.

---

[3] *Peay* was a federal question case under ERISA.  In the Fifth Circuit, personal jurisdiction in ERISA cases is based on the defendant's contacts with the United States.  *See Bellaire v. Gen. Hosp. v. Blue Cross and Blue Shield of Mich.*, 97 F.3d 822, 825-26 (5th Cir. 1996) ("[T]he relevant inquiry is whether the defendant has had minimum contacts with the United States.").

Basing jurisdiction on foreseeability alone runs contrary to Fifth Circuit cases holding that responding to communications from the forum state, and making payments into the forum state, do not create personal jurisdiction because there is an insufficient showing of purposeful availment. *See*, *e.g.*, *Freudensprung,* 379 F.3d at 344 ("[T]his court has repeatedly held that the combination of mailing payments to the forum state [and] engaging in communications related to the execution and performance of the contract . . . are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant."); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777-78 (5th Cir. 1986) (numerous communications with Texas corporation and three payments sent to Texas were insufficient for specific personal jurisdiction in Texas over Oklahoma defendant); *see also Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415 (10th Cir. 1988) (insurer's letters and telephone conversations to coordinate repairs of tractor trailer were insufficient to support specific jurisdiction in Oklahoma). Because foreseeability, in the absence of the defendant insurer's affirmative acts to avail itself of the benefits of activities in that state, is insufficient to support personal jurisdiction, the health insurance-related cases that give extensive consideration to purposeful availment – including *Whittaker*, *Bayada*, and *Berg* – are more consistent with the Fifth Circuit precedent.

### 2. The Blue Card Program

St. Luke's also argues that BCBSLA's participation in the Blue Card Program, when considered in conjunction with its authorization of treatment and its partial payment of the Texas-issued bills for the insured's treatment in Texas, provides a sufficient basis for specific

personal jurisdiction.  St. Luke's emphasizes foreseeability, arguing that by participating in

the Blue Card Program, BCBSLA provides out-of-state coverage for its insureds and

therefore could reasonably foresee having to adjudicate coverage disputes  in those states:

> It is foreseeable that a person covered by a medical insurance
> plan would need the assistance of a Texas hospital as evidenced
> by BCBSLA's utilization of the Blue Cross and Blue Shield of
> Texas' out of state Blue Card system.  Therefore, it was
> foreseeable that BCBSLA's insureds would seek treatment in
> Texas and that a dispute may arise in relation to that treatment
> which would require BCBSLA to litigate in the forum of State
> of Texas.

(Docket Entry No. 13 at 5).  St. Luke's also argues that BCBSLA's participation in the Blue

Card Program satisfies purposeful availment because through that program, BCBSLA

received the benefits of in-state processing and discounted rates under Blue Cross and Blue

Shield of Texas's managed-care contract with St. Luke's.  (*Id*. at 2, 6) ("BCBSLA has

entered into a contract with Blue Cross and Blue Shield of Texas regarding participation in

[t]he Blue Card System so as to take advantage of preferential negotiated rates for its

insureds with providers in the state of Texas.").

St. Luke's first argument – that the provision of coverage in foreign states suffices for

specific personal jurisdiction because BCBSLA could reasonably foresee having to

adjudicate coverage disputes in foreign states – is unavailing.  As discussed below, cases

such as *Perez v. Pan American Life Insurance Co.,* 1996 WL 511748, at *2, make clear that

merely providing out-of-state health coverage to insureds does not subject an insurer to

personal jurisdiction in every foreign state in which an insured happens to obtain medical

14

services.   St. Luke's second argument – that purposeful availment is established by BCBSLA's affirmative decision to enter a contract that allows it to obtain processing and discounted rates in foreign states – is more difficult to resolve.  *Perez* does not involve the additional factors present here, including that the defendant out-of-state insurer had entered into an agreement with a national association that allowed the insurer to obtain discounted rates under forum-state contracts between forum-state insurers and medical-services providers; that the claim processing was handled in the forum state by a forum-state insurer acting under the national association agreement to provide such services to the defendant out-of-state insurer; and that this defendant received the benefit of discounted rates under an agreement between the forum-state insurer and the forum-state medical-services provider.

In *Perez,* the Fifth Circuit upheld the district court's conclusion that it lacked personal jurisdiction over a Guatemalan insurance company that provided worldwide coverage and authorized treatment for its insured in Texas but then refused to pay.  The Fifth Circuit held that the only "arguable contacts" the insured had to Texas were "the worldwide coverage language in the policy in itself" and the insured's claim that a representative of the insurer had authorized treatment in Texas.  The court noted that the insurance company "solicits no business in Texas, does not maintain an office in Texas, and does not have a representative or agent in Texas.  The insurance policy at issue was solicited and issued in Guatemala . . . ."  1996 WL 511748, at *2.  The Fifth Circuit concluded that "[t]he court's exercise of jurisdiction based solely on the[] thin 'contacts'" proffered by the plaintiffs "would offend the traditional notions of fair play and substantial justice."  *Id.*  *Perez* is distinguishable,

15

however, because in *Perez*, all billing and claims processing occurred in Guatemala and the only contract was the insurance agreement between the Guatemalan insured and insurer.  In the present case, by contrast, much of the billing and claims handling occurred in Texas, through Blue Cross and Blue Shield of Texas, and BCBSLA received a substantial discount on P.B.'s treatment under the Blue Card Program, which entitled BCBSLA to the discounted rates under the managed-care agreement between St. Luke's and Blue Cross and Blue Shield of Texas.

   *Whittaker v. Medical Mutual of Ohio*, 96 F. Supp. 2d at 1200, involved an insurance policy under which the insurer was "obligated to carry out its insurance contracts no matter in which state treatment is sought."  *Id*.  In an arrangement that appears similar to the Blue Card Program, the insurer arranged to have Blue Cross and Blue Shield of Kansas process the plaintiff's claims while the plaintiff was in Kansas.  The insurer otherwise had no contacts with Kansas.  The court declined to find specific personal jurisdiction:

> Rather than directly communicating with plaintiff in Kansas, Medical Mutual chose to have BCBSK process plaintiff's claims to further remove themselves from any contact with Kansas.  If not for plaintiff's unilateral decision to move to Kansas, Medical Mutual would not have asked BCBSK to process her claims. Medical Mutual contacted BCBSK for the sole purpose of fulfilling its obligation to process plaintiff's claim.  Defendants did not solicit business in Kansas, nor did they participate in the Kansas insurance market.

*Id*. at 1201.  The court noted that even though the insurer had an obligation to pay for treatment rendered in another state, that did not amount to purposeful availment of the benefits of conducting activities in that state because the insurer's "presence" in the state was

16

merely a response to the insured's decision to travel there.  In *Whittaker,* however, there is no discussion of whether the defendant insurer took advantage of any discounts that the in-state affiliate that processed the claims enjoyed.  In the present case, the parties do not dispute that BCBSLA's membership in the Blue Card Program  enabled it to take advantage of the 60% discounted rate provided under Blue Cross and Blue Shield of Texas's contract with St. Luke's.  The issue is whether BCBSLA's affirmative act of joining the Blue Card Program, through which it obtained in-state processing and discounts in states with affiliate members, amounts to purposeful availment of the benefits of doing business in Texas.

In *Resolution Trust Corp. v. First of America Bank*, 796 F. Supp. 1333, 1336-37 (C.D. Cal. 1992), a California federal district court addressed a similar issue.  The defendant, a Michigan bank with no contacts to California, participated in a national electronic fund clearinghouse system that allowed members' clients to obtain wire transfers in foreign states from their home banks through member entities.  The plaintiff was a California-based bank that was to have received the funds the defendant was to have transferred to California.  The plaintiff sued in California federal district court, asserting that specific personal jurisdiction was present "on contractual grounds arising from [the defendant's] membership in the clearinghouse association."  *Id*. at 1337.  The court declined to find personal jurisdiction, concluding that the "contract connection argument is misplaced here."  *Id*.  The court explained that "[t]he defendant Michigan bank did not contract with any California entity. Both banks simply belong to a clearinghouse service.  This does not establish a California contract, a contract between the parties, a substantial connection to California, or purposeful

17

availment of California." *Id.*  The court reasoned that "[t]he consequence of finding that the Bank is subject to jurisdiction by virtue of the clearinghouse involvement would mean that every bank in the nation is probably subject to jurisdiction in all states." *Id.* at 1335.[4]  As in *Resolution Trust*, BCBSLA has not contracted directly with a Texas entity but instead has joined a national organization that allows it to obtain coverage and processing in all of the Blue Card Program members' states.  There is no "[Texas] contract, a contract between the parties, [or] a substantial connection to [Texas]." *Id.* at 1337.

As discussed below, whether specific personal jurisdiction is present in this case is significantly affected by whether the claims arise under state law or ERISA.  If the complaint is amended to assert an ERISA claim, there will be a clear basis for specific personal jurisdiction.  For this reason, the ruling on the personal jurisdiction issue is deferred until after the time for the plaintiff to amend her complaint, set below, has passed.[5]

---

[4]  The *Resolution Trust* court also rejected the plaintiff's foreseeability argument:
> By becoming a member of the national clearinghouse service the bank allowed its services to enter the "stream of commerce."  Being part of the wire clearinghouse system resulted in foreseeability that its services could be used in California.  But there is no jurisdiction absent an act to purposefully avail itself of the California market.  Other than placing itself in the stream of commerce, the bank did no act to avail itself of California.  There is no evidence of advertising, employees or agents in the state, or of an intent or purpose to serve the California market.  Further, the bank did not initiate contact with the California bank; the contact was initiated with it.

796 F. Supp. at 1336.

[5]  St. Luke's also argues that BCBSLA's participation in the Blue Card Program gives rise to general jurisdiction.  One court has specifically rejected the argument that participating in the Blue Card Program subjects a Blue Card Program member to general jurisdiction in any state covered by that program.  In *Bayada Nurses*, 2008 WL 2945388, at *4, the court concluded that even assuming the truth of the allegations about the Blue Card Program:
> the allegations. . . are insufficient for me to make such a determination about general jurisdiction.  The exercise of general jurisdiction must be

18

### III.     The Motion to Dismiss Under Rule 12(b)(6)

### A.     The Legal Standard

Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  A court must not dismiss a complaint for failure to state a claim unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007); *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1974).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1964-65); *see also Sonnier*, 509 F.3d at 675 (quoting *Twombly*, 127 S.Ct. at 1965).  "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum

---

> based upon "continuous and systematic" contacts with Pennsylvania, and Counsel's argument does not establish the types of contracts upon which this court can base a finding of general jurisdiction. . . .  BCBSM does not have a place of business in Pennsylvania and has never been licensed to do business here.  It makes no sales here, has no employees here and has no agent for service of process here.  It has no interest in any property here. All of these facts suggest that the exercise of general jurisdiction here would be [inappropriate].

*Id*.  In the present case, the parties do not dispute that BCBSLA is licensed to offer health-care services only in Louisiana; that it does not maintain any registered agents, employees, or offices outside Louisiana; and that it does not maintain bank accounts in Texas, pay taxes in Texas, or own real property in Texas.  The quantity and quality of contacts shown in the record are insufficient to establish general jurisdiction in Texas over BCBSLA, even considering the Blue Card Program.

19

expenditure of time and money by the parties and the court.'"  *Cuvillier*, 503 F.3d at 401

(quoting *Twombly*, 127 S.Ct. at 1966) (internal quotations omitted).

      **B.**      **The Breach of Contract Claim**

            **1.**      ***The Third-Party Beneficiary Theory***

      St. Luke's alleges that because it has a managed-care contract with Blue Cross and

Blue Shield of Texas, and because Blue Cross and Blue Shield of Texas participates with

BCBSLA in the Blue Card Program, BCBSLA "participates directly [in the managed care

contract] as an out-of-state intended beneficiary."  (Docket Entry No. 1, Ex. A at 2-3).  St.

Luke's asserts that through this relationship, it "has entered into [a] hospital service contract

indirectly with" BCBSLA.  St. Luke's response to BCBSLA's motion to dismiss also asserts

for the first time that St. Luke's stands in contractual privity to BCBSLA because the patient

assigned to St. Luke's all rights against BCBSLA arising out of the medical treatment.

(Docket Entry No. 13 at 1-2).

      "[T]he presumption in contract law is against finding that a stranger to a contract is

a third party beneficiary, so as to confer legal standing to enforce the contract's stated

obligations, even if the contract expressly states that one of the signatories may have

obligations to that stranger.  A party is presumed to contract only for its own benefit; any

intent to benefit a third party must be clearly apparent."  *In re Bayer Materialscience, LLC*,

265 S.W.3d 452, 456 (Tex. App. – Houston [1 Dist.], 2007, pet. denied) (internal citations

omitted) (citing *MCI Telecomm. Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d 647, 652 (Tex.

1999)).  "A third party may recover on a contract . . . only if the parties entered into the

contract directly for the third party's benefit and does not have a right to enforce the contract if he or she received only an incidental benefit."  14 TEX. JUR. 3D CONTRACTS § 283 (2008).

When a third-party beneficiary relationship is established, "the third-party beneficiary, who did not sign the contract, is not liable for either signatory's performance and has no contractual obligations to either."  *Motorsport Eng'g, Inc. v. Maserati S.p.A.*, 316 F.3d 26, 29 (1st Cir. 2002) (internal citations omitted).  "A contract . . . generally binds no one except the parties to it[, and] courts generally cannot bind a nonparty to a contract because the nonparty never agreed to the contract's terms."  *BML Stage Lighting, Inc. v. Mayflower Transit, Inc.*, 14 S.W.3d 395, 400 (Tex. App. – Houston [14th Dist.], 2000, no pet.) (internal citations omitted); *see also Comer v. Micor, Inc.*, 436 F.3d 1098, 1102 (9th Cir. 2006) ("A third party beneficiary might in certain circumstances have the power to sue under a contract; it certainly cannot be *bound* to a contract it did not sign or otherwise assent to.").

St. Luke's asserts that BCBSLA is a third-party beneficiary to the managed-care contract between St. Luke's and Blue Cross and Blue Shield of Texas.  BCBSLA disputes that it is a third-party beneficiary of the managed-care contract.  (Docket Entry No. 12 at 5 n. 1).  But even if BCBSLA were a third-party beneficiary, St. Luke's claim would fail because it is asserting its rights under the managed-care contract *against* BCBSLA.  Because an action cannot be maintained *against* a third-party beneficiary to enforce contractual obligations, *see Motorsport Eng'g,* 316 F.3d at 29, St. Luke's claim must be dismissed.

### 2.      *The Assignment Theory*

21

Perhaps recognizing this deficiency, St. Luke's raises a new breach of contract theory in its opposition to BCBSLA's motion to dismiss.  St. Luke's argues that because P.B. assigned her rights against BCBSLA to St. Luke's, there is contractual privity between St. Luke's and BCBSLA.  St. Luke's now characterizes the managed-care agreement as "merely provid[ing] the rates, terms and conditions of how the [assigned] claim should have been paid."  (Docket Entry No. 13 at 5).  BCBSLA counters that St. Luke's should not be permitted to amend its pleadings in an opposition brief.  It argues further that if this court considers this new breach of contract theory, St. Luke's state-law claims would be preempted by ERISA.  The BCBSLA plan is a group health insurance plan that Volunteers of America Greater Baton Rouge, Inc., a nongovernment organization, entered into on behalf of its employees.  To fund the plan, Volunteers of America Baton Rouge, Inc. contracted with and pays premiums to BCBSLA.  (Docket Entry No. 14, Ex. 1 ¶¶ 6, 7).  ERISA governs the plan. 29 U.S.C. § 1001 *et seq.*

Claims raised for the first time in an opposition brief may be considered as amendments to the original complaint under Federal Rule of Civil Procedure 15(a).  *See Stover v. Hattiesburg Public School Dist.*, - - - F.3d - - -, 2008 WL 4911264, at *12 n. 2 (5th Cir. Nov. 18, 2008); *Debowale v. U.S. Inc.*, 62 F.3d 395, 395 (5th Cir. 1995); *Cash v. Jefferson Assocs, Inc.*, 978 F.2d 217, 218 (5th Cir. 1992); *Sherman v. Hallbauer*, 455 F.2d 1236, 1242 (5th Cir. 1972).  St. Luke's new state-law breach of contract claim asserts that "[a]s assignee under the insurance contract, [St. Luke's] steps into the shoes of the insured

and has direct, independent standing to bring this cause of action to recover additional benefits due under the contract."  (Docket Entry No. 13 at 2).

ERISA preempts state-law claims that are "dependent on or derived from [the insured's] right to recover benefits under the [health insurance] plan."  *Transitional Hosps. Corp. v. Blue Cross and Blue Shield of Texas*, 164 F.3d 952, 955 (5th Cir. 1999). Specifically, "breach of contract claims based on [a] defendant['s] alleged failure to pay the full amount of benefits due under the terms of the policy are preempted" by ERISA.  *Id*. at 954-55 ("[A] hospital's state-law claims for breach of fiduciary duty, negligence, equitable estoppel, *breach of contract*, and fraud are preempted by ERISA when the hospital seeks to recover benefits owed *under the plan* to a plan participant who has assigned her right to benefits to the hospital.") (emphasis added); *see also Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1290-91 (5th Cir. 1988) (affirming district court's dismissal on ERISA preemption grounds of hospital's state-law breach of contract claims arising out of assignment of patient's rights under health care policy); *Abilene Reg. Med. Ctr. v. United Indus. Workers Health and Benefits Plan*, No. 06-10151, 2007 WL 715247, at *5 (5th Cir. Mar. 6, 2007) (unpublished) (same).

"ERISA does not preempt state-law claims brought by an independent, third-party health care provider . . . against an insurer for negligently misrepresenting the existence of healthcare coverage."  *Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Life Ins. Co.*, No. 05-cv-4389, 2007 WL 320974, at *7 (S.D. Tex. Jan. 30, 2007); *see also St. Luke's Episcopal Hosp. Corp. v. Stevens Transport, Inc.*, 172 F. Supp. 2d 837, 842-43 (S.D. Tex.

23

2001) (citing *Transitional*, 164 F.3d at 955).  But ERISA does preempt state-law claims brought by a health care provider against an insurer as an assignee of an insured's right to recover benefits under the policy.  This theory of recovery is plainly "dependent on or derived from" the terms of the health insurance plan.  *See Transitional*, 164 F.3d at 954. Because St. Luke's breach of contract theory is now premised on its contractual rights under the health insurance policy as an assignee, ERISA preempts the state-law breach of contract claim.  That claim is dismissed with leave to amend.

St. Luke's may amend within thirty days.  If St. Luke's amends to assert an ERISA claim, the personal jurisdiction issue is far simpler.[6]  "[U]nder ERISA's nationwide service of process provision," 29 U.S.C. § 1132(e)(2), "[a] court may exercise personal jurisdiction over the defendant if it determines that the defendant has sufficient ties to the United States." *Frost v. ReliOn, Inc.*, No. 3:06-cv-0822, 2007 WL 670550, at *2 (N.D. Tex. Mar. 2, 2007) (citing *Bellaire v. Gen. Hosp. v. Blue Cross and Blue Shield of Mich.*, 97 F.3d 822, 825-26 (5th Cir. 1996)).  In *Bellaire*, the Fifth Circuit affirmed the holding of *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994), "that when a federal court attempts 'to exercise personal jurisdiction over a defendant in a suit based upon a

---

[6] A court may grant leave under Federal Rule of Civil Procedure 15(a) to replead to state a basis for personal jurisdiction. Charles A. Wright et al., FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1474 (1990); *see also Lone Star Motor Import, Inc. v. Citroen Cars Corp.*, 288 F.2d 69, 75 (5 th Cir. 1961) (stating that after dismissing for lack of personal jurisdiction, district court should have granted leave to amend to state basis for personal jurisdiction); *Allred v. Moore & Peterson*, 117 F.3d 278, 280-81 (5th Cir. 1997) (affirming district court's consideration of amended complaint's asserted grounds for personal jurisdiction after original complaint was dismissed for lack of jurisdiction); *see also Thomson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1172-73 (5th Cir. 1985) (concluding that district court had erred in denying leave to amend after dismissing for lack of personal jurisdiction when the plaintiffs had discovered new evidence supporting their jurisdictional argument).

federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States.'" 97 F.3d at 825 (quoting *Busch*, 11 F.3d at 1258). In *Bellaire*, the court concluded that a Texas federal district court properly exercised jurisdiction in an ERISA action against Blue Cross and Blue Shield of Michigan, which operated only in Michigan and had contacts with Texas only because two of its insureds were treated there. The court concluded that "the district court properly exercised personal jurisdiction over Blue Cross based on its contacts with the United States." *Id*. at 826. This continues to be the rule in the Fifth Circuit. *See Luallen v. Higgs*, 277 Fed. Appx. 402, 404-05 (5th Cir. 2008). Because BCBSLA has sufficient contacts with the United States, this court would have personal jurisdiction if St. Luke's were to amend to assert claims under ERISA.

## V.    Conclusion

This court grants the motion to dismiss for failure to state a claim, grants leave to amend, and defers deciding on personal jurisdiction until the time for amendment has passed. St. Luke's may amend no later than January 30, 2009.

SIGNED on January 6, 2009, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

25